## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES DEPARTMENT OF ENERGY, <br><br> Plaintiff, <br><br> v. <br><br> FRIEDRICH AIR CONDITIONING, LLC, <br><br> Defendant. | Civil Action No. _____ |

## COMPLAINT

1.       American companies manufacturing products in the United States must have a level playing field.  It is unfair when companies employing American workers and laborers dutifully follow the law when, at the same time, foreign companies using cheaper foreign labor import illegal, inferior products.  These products failed to meet requirements intended to protect American consumers and advance energy efficiency.

2.       Defendant Friedrich Air Conditioning, LLC ("Defendant" or "Friedrich") is a foreign-owned company.  Defendant manufactures central air conditioners and central air conditioning heat pumps ("CAC/HPs") in Monterrey, Mexico.  For years, Defendant unlawfully imported and sold those CAC/HPs in interstate commerce in the United States.  Friedrich knew that each sale of such products violated the Energy Policy and Conservation Act, 42 U.S.C. §§ 6291 – 6317, ("EPCA" or "the Act"), and regulations promulgated thereunder.

3.    Prior to this suit, American manufacturers complained to the Department of Energy ("Department") about Friedrich's misconduct.  Friedrich imported and sold CAC/HPs that did not comply with the same legal requirements that American manufacturers invested in meeting.  American manufacturers pointed out that Friedrich was violating the law.  And Friedrich was knowingly doing so for years.

4.    As a result, the Department cited Friedrich for its violations.  Through its knowing disregard of EPCA's requirements, and undercutting its U.S. competitors, Friedrich generated revenues several times the penalty that the Department ultimately assessed under 10 C.F.R. § 429.102(a) and 42 U.S.C. § 6302(a).  Because Friedrich refuses to respond appropriately to and resolve this matter, the Department brings this action pursuant to 42 U.S.C. § 6303 to enforce these penalties, and to obtain any additional relief that the Court deems appropriate.

## PARTIES

5.    The Department is an executive department of the United States government. 5 U.S.C. § 101.  The Department has authority to implement certain provisions of EPCA relating to energy conservation standards of covered products and to enforce violations of EPCA.  42 U.S.C. §§ 6293, 6295, 6296(d), 6298, 6302, 6303.  The Department's headquarters are at 1000 Independence Avenue Southwest, Washington, DC.

6.    Defendant Friedrich is a corporation incorporated under the laws of the State of Delaware and has its principal place of business in San Antonio, Texas.

7.    Defendant is part of a portfolio of companies owned by Paloma Co., Ltd. of Nagoya, Japan that spans more than 80 countries.  Friedrich manufactures CAC/HP models

in Monterrey, Mexico, then imports and distributes them across the United States, including in this District.

8.       Defendant is a "person" as defined in 42 U.S.C. § 6202(2) and 10 C.F.R. § 430.2.

## JURISDICTION AND VENUE

9.       This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States; pursuant to 28 U.S.C. § 1345, because this action has been commenced by the United States; and pursuant to 42 U.S.C. § 6303(d)(3)(B), because this action has been brought to enforce a civil penalty assessed by the Department against Friedrich.

10.       This Court has personal jurisdiction over Friedrich because Friedrich resides in this District and transacts business in this District.

11.       Venue in this District is proper because Friedrich resides in this District, 28 U.S.C. §§ 1391(b), 1395(a).

## LEGAL BACKGROUND

**A.     The Energy Policy and Conservation Act and 10 C.F.R. Parts 429, 430 and 431**

12.       EPCA authorizes the Department to regulate the energy efficiency of several consumer products.  Specifically, Title III, Part B of EPCA established the Energy Conservation Program for Consumer Products Other Than Automobiles.  This program covers a wide range of consumer products.  This part of EPCA is codified at 42 U.S.C. §§ 6291–6309.

13.     "Covered products" are consumer products for which the Department may establish energy conservation standards.  42 U.S.C. §§ 6291(1).

14.     Under EPCA, a person who manufactures, produces, assembles, or imports a consumer product is a manufacturer.  42 U.S.C. §§ 6291(10) and (12).

15.     A "consumer product" is an article "of a type which in operation consumes, or is designed to consume energy . . . and which, to any significant extent, is distributed in commerce for personal use or consumption by individuals; without regard to whether such article of such type is in fact distributed in commerce for personal use or consumption by individuals . . . ."  42 U.S.C. § 6291(1); *accord* 10 C.F.R. § 430.2.

16.     Thus, to qualify as a "consumer product," the statute does not require an article to be distributed in commerce for personal use or consumption by individuals.

17.     Rather, if a particular product is "of a type" which, to any significant extent, is distributed in commerce for personal use or consumption by individuals, then the product is a "consumer product."

18.     A central air conditioner is a "covered product."  42 U.S.C. § 6292(a)(3).

19.     A central air conditioning heat pump is a "covered product."  42 U.S.C. § 6292(a)(3).

20.     Under EPCA, Congress directed the Department to establish and revise energy conservation standards for various covered products, and to establish and revise test procedures by which a covered product's compliance with the applicable energy conservation standard is determined and reported.  42 U.S.C. §§ 6293, 6295, 6302(a).

21.    An energy conservation standard includes performance standards which prescribe a minimum level of energy efficiency or maximum level of energy use, determined in accordance with test procedures prescribed under EPCA. 42 U.S.C. §§ 6291(6), *see also e.g.,* 42 U.S.C. § 6295(d); 10 C.F.R. § 430.32(c).

22.    Each manufacturer, before distributing in commerce any basic model of a covered product subject to an applicable energy conservation standard, must submit a report to the Department certifying that each basic model meets the applicable energy conservation standard(s). 42 U.S.C. § 6302(a); 10 C.F.R. § 429.12(a).

23.    "Distribution in commerce" means to sell in commerce, import, introduce or deliver for introduction into commerce, or to hold for sale or distribution after introduction into commerce. 42 U.S.C. §§ 6291(16), (17).

24.    "Basic model" means all units of a given type of covered product (or class thereof) manufactured by one manufacturer; having the same primary energy source; and, which have essentially identical electrical, physical, and functional (or hydraulic) characteristics that affect energy consumption, energy efficiency, water consumption, or water efficiency. 10 C.F.R. § 430.2.

25.    As it relates to single-package CAC/HP, "essentially identical electrical, physical, and functional (or hydraulic) characteristics" means: all individual models having comparably performing compressor(s) [no more than five percent variation in displacement rate (volume per time) rated by the compressor manufacturer, and no more than five percent variations in capacity and power input rated by the compressor manufacturer corresponding to the same compressor rating conditions], outdoor coil(s) and indoor coil(s) [no more than

five percent variation in face area and total fin surface area; same fin material; same tube material], outdoor fan(s) [no more than ten percent variation in outdoor air flow], and indoor blower(s) [no more than ten percent variation in indoor air flow, with no more than twenty percent variation in fan motor power input]. *Id.*

26.    Manufacturers may choose to make each individual model/combination its own basic model provided the testing and represented value requirements are met.  *Id.*

27.    Certifications of compliance, and any other written representation of energy efficiency, must fairly disclose the results of testing conducted in conformance with the applicable test requirements for the model certified.  10 C.F.R. § 429.12(c)(2); 42 U.S.C. § 6293(c)(2); 42 U.S.C. § 6302(a).

28.    To certify a CAC/HP basic model properly, a manufacturer must obtain data from testing a sample of sufficient size of the basic model, though no fewer than two units, following the CAC/HP test procedure, and then apply the calculations in 10 C.F.R. § 429.16 to the test results.  10 C.F.R. §§ 429.11(b), 429.16(b)(13)(ii), and 430.23(m).

29.    A certification report submitted by a manufacturer must include a compliance statement that certifies: (1) the basic model complies with the applicable energy conservation standard; (2) all required testing has been conducted in conformance with the applicable test procedure requirements (or in accordance with a test procedure waiver); (3) all information in the report is true, accurate, and complete; and (4) that the manufacturer is aware of the penalties associated with violations of EPCA, the regulations thereunder, and the prohibition at 18 U.S.C. § 1001 prohibiting knowing false statements to the Federal Government. 10 C.F.R. § 429.12(b), (c).

30.    EPCA authorizes the Department to issue rules it "deems necessary to carry out" the statute.  42 U.S.C. § 6298.

31.    Therefore, in 2011, to ensure that all covered products distributed in commerce comply with the applicable energy conservation standards and have been tested as prescribed by the rules, the Department issued a rule clarifying the scope of prohibited acts in its regulations.  *Energy Conservation Program: Certification, Compliance, and Enforcement for Consumer Products and Commercial and Industrial Equipment*, 76 Fed. Reg. 12,422, 12,494 (Mar. 7, 2011); 10 C.F.R. § 429.102(a).

32.    In particular, that rule specified as prohibited acts failure to test a covered product in conformance with the applicable test requirements prescribed in 10 C.F.R. part 430 and failure to certify covered products properly.  *Id.*

33.    EPCA authorizes the Department to seek a civil penalty from a manufacturer that knowingly commits a prohibited act.  42 U.S.C. § 6303(a); 10 C.F.R. § 429.120.  To do so, EPCA requires the Department to: (1) to issue a notice of the proposed penalty and then, unless the manufacturer elects district court review of the proposed penalty (2) refer the matter to an administrative law judge.  42 U.S.C. § 6303(d)(1), (d)(2)(A).  Friedrich has elected district court under this provision.

B.     **Energy Conservation Standards and Test Procedures for Central Air Conditioners and Central Air Conditioning Heat Pumps**

34.     Central air conditioners have been defined as covered consumer products since the original Energy Policy and Conservation Act of 1975.  Pub. L. No. 94-163, 89 Stat. 871, 918 (1975), currently codified at 42 U.S.C. § 6292(3).

35.     A "central air conditioner" is a product, other than a packaged terminal air conditioner or packaged terminal heat pump that is (A) powered by single phase electric current; (B) air-cooled; (C) rated below 65,000 [British thermal units or "Btu"] per hour; (D) not contained within the same cabinet as a furnace with a rated capacity above 225,000 Btu per hour; and (E) a heat pump or a cooling only unit.  42 U.S.C. § 6291(21).

36.     A "heat pump" (or central air conditioning heat pump) is a product, other than a packaged terminal heat pump, which consists of one or more assemblies; is powered by single phase electric current; is rated below 65,000 Btu per hour; utilizes an indoor conditioning coil, compressors, and refrigerant-to-outdoor-air heat exchanger to provide air heating; and may also provide air cooling, dehumidifying, humidifying, circulating, and air cleaning.  42 U.S.C. § 6291(24).

37.     The Department's regulations further exclude from the definition of "central air conditioner or central air conditioning heat pump" the following items: "single-phase single-package vertical air conditioner with cooling capacity less than 65,000 Btu/h, single-phase single-package vertical heat pump with cooling capacity less than 65,000 Btu/h, computer room air conditioner, [and] unitary dedicated outdoor air system as these equipment categories are defined at 10 C.F.R. 431.92."  10 C.F.R. § 430.2.

38. Energy conservation standards and test procedures are established for CAC/HPs. 42 U.S.C. § 6295(d); 10 C.F.R. pt. 430, subpt. B, appendix M or M1, 10 C.F.R. § 430.32(c).

39. Accordingly, manufacturers of such products are required to manufacture those products in conformance with the applicable energy conservation standard, confirmed through testing in conformance with the applicable test procedures, and to certify testing and compliance to the Department. 10 C.F.R. §§ 429.12, 430.23(m), and 430.32(c).

40. The energy conservation standards for CAC/HPs establish minimum levels of energy efficiency that depend on the model's system configuration (e.g., single-package or split system). 10 C.F.R. § 430.32(c); *see also* 42 U.S.C. § 6295(d).

41. A "single-package unit" is any CAC/HP that has all major assemblies enclosed in one cabinet. 10 C.F.R. pt. 430, subpt. B, appendices M & M1.

42. The first standards for single package CAC/HPs were statutory, for units manufactured on or after January 1, 1993. National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, 101 Stat. 110, codified at 42 U.S.C. § 6295(d) (1987).

43. In 1989, the Department issued a final rule promulgating the statutory standards for single-package CAC/HPs manufactured after January 1, 1993, into the Code of Federal Regulations. *Energy Conservation Program for Consumer Products: Final Rulemaking Regarding Regulations Related to Energy Conservation Standards for Consumer Products*, 54 Fed. Reg. 6062, 6077 (Feb. 7, 1989); *see also Energy Conservation Program for Consumer Products: Central Air Conditioners and Heat Pumps Energy Conservation Standards*, 66 Fed. Reg. 7170, 7199 (Jan. 22, 2001).

44.     The Department has amended the energy conservation standards for single-package CAC/HPs three times since 1989: first for CAC/HPs manufactured beginning on January 23, 2006, then for those manufactured beginning on January 1, 2015, and finally for those manufactured beginning on January 1, 2023.  *Energy Conservation Program for Consumer Products: Central Air Conditioners and Heat Pumps Energy Conservation Standards*, 66 Fed. Reg. 7170, 7199 (Jan. 22, 2001); *Energy Conservation Program: Energy Conservation Standards for Residential Furnaces and Residential Central Air Conditioners and Heat Pumps*, 76 Fed. Reg. 37,408 (Jun. 27, 2011); *Energy Conservation Program: Energy Conservation Standards for Residential Central Air Conditioners and Heat Pumps*, 82 Fed. Reg. 1786 (Jan. 6, 2017).

45.     The current energy conservation standards for CAC/HPs are set forth at 10 C.F.R. § 430.32(c).

46.     Beginning in 1979, the Department established a test procedure to evaluate compliance with the conservation standards for CAC/HPs.  *Energy Conservation Program for Consumer Products; Test Procedures for Central Air Conditioners, Including Heat Pumps*, 44 Fed. Reg. 76,700 (Dec. 27, 1979).

47.     The Department amended the test procedure for central air conditioners and central air conditioning heat pumps in 2005, 2017, and 2022.  *Energy Conservation Program for Consumer Products: Test Procedure for Residential Central Air Conditioners and Heat Pumps*, 70 Fed. Reg. 59,122 (Oct. 11, 2005); *Energy Conservation Program: Test Procedures for Central Air Conditioners and Heat Pumps*, 82 Fed. Reg. 1426 (Jan. 5, 2017); *Energy Conservation Program: Test Procedure for Central Air Conditioners and Heat Pumps*, 87 Fed. Reg. 64,550 (Oct. 25, 2022).

48.     Each manufacturer must determine each CAC/HP model complies with applicable energy conservation standards based on values derived from testing conducted in accordance with the applicable test procedure.  10 C.F.R. §§ 429.13, 430.23(m); 42 U.S.C. § 6295(s).

49.     The applicable test procedure for CAC/HPs is set forth at 10 C.F.R. pt. 430, subpt. B, appx. M (for representations made with respect to the energy use, power, or efficiency of CAC/HP prior to January 1, 2023) and appendix M1 (for representations made with respect to the energy use, power, or efficiency of CAC/HPs on or after January 1, 2023) ("CAC/HP test procedure").  *See* 10 C.F.R. § 430.23(m); *see also* 42 U.S.C. § 6295(s), 10 C.F.R §§ 429.13, 429.102(a)(2).

50.     EPCA authorizes the Department to require that each manufacturer of a covered product, such as CAC/HPs, submit information or reports to the Department with respect to energy efficiency or energy use of such covered product. 42 U.S.C. § 6296(d)(1).

51.     In support of that requirement, a manufacturer of a CAC/HP must maintain test data underlying its written representations for two years after reporting the model is discontinued.  42 U.S.C. § 6296(b)(2); 10 C.F.R. § 429.71(c).

C.     **Central Air Conditioner and Central Air Conditioning Heat Pump Certification**

52.     Each manufacturer of a CAC/HP (including single-package CAC/HP) basic model must submit to the Department a compliance statement and a certification report attesting that the basic model meets the applicable energy conservation standard at 10 C.F.R.

§ 430.32(c) before distributing in commerce that CAC/HP basic model, annually thereafter, and when the basic model discontinued.  10 C.F.R. § 429.12(a), (f).

53.    A basic model of a CAC/HP includes all units of a given class (such as split systems, single-package, and space-constrained air conditioners) of a manufacturer's products that have, among other things, the same primary energy source and essentially identical electrical, physical, and functional characteristics that affect energy consumption and energy efficiency (including comparably performing compressors).  10 C.F.R. § 430.2.

## D.    Prohibited Acts and Penalties

54.    Any manufacturer that fails to label a covered product to which a rule under 42 U.S.C. § 6294 applies or provide information such as test data commits prohibited acts. 10 C.F.R. § 429.13; 42 U.S.C. § 6302(a).

55.    To provide test data for a model's written representation, a manufacturer must test the model following the applicable test procedure.  42 U.S.C. §§ 6293(c), 6296(b); 10 C.F.R. § 429.12(c).

56.    Thus, any manufacturer that fails to test any covered product subject to an energy conservation standard in conformance with the applicable test requirements in 10 C.F.R. part 430 commits a prohibited act.  *See* 10 C.F.R. §§ 429.13, 429.102(a)(2); 42 U.S.C. § 6302(a).

57.    Any manufacturer that fails to submit any required report that properly certifies a basic model of a covered product subject to an applicable energy conservation standard commits prohibited acts.  10 C.F.R. § 429.102(a)(1); *see also* 42 U.S.C. § 6302(a).

58.     Any person who knowingly commits a prohibited act is subject to a civil penalty per violation.  42 U.S.C. § 6303; 10 C.F.R. § 429.120.

59.     Beginning on January 9, 2024, the maximum civil penalty for committing a prohibited act was $560 per violation.  *Inflation Adjustment of Civil Monetary Penalties*, 89 Fed. Reg. 1029 (Jan. 9, 2024); *see also* Federal Civil Penalties Inflation Adjustment Act Improvements Act, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 600, codified at as a note to 28 U.S.C. § 2461 (2024).

60.     Beginning on January 9, 2024, each violation involving a failure to provide information is subject to a penalty of up to $560.  10 C.F.R. § 429.120; 42 U.S.C. § 6303(a). For each basic model, each day of noncompliance constitutes a separate violation.  *Id.*

## GENERAL ALLEGATIONS

## A.     SUMMARY OF THE ACTION

61.     This action seeks judicial review of a civil penalty that the Department assessed against Friedrich for A) distributing in commerce CAC/HPs without first testing them in accordance with the CAC/HP test procedure and B) distributing in commerce central air conditioners or central air conditioning heat pumps without certifying they comply with the central air conditioner and central air conditioning heat pump energy conservation standards.

62.     On or about January 24, 2024, the Department issued to Defendant a Notice of Proposed Civil Penalty in accordance with 42 U.S.C. § 6303(d)(1) for distributing in commerce central air conditioners or central air conditioning heat pumps without first testing them under the CAC/HP test procedure and for distributing in commerce central air

conditioners or central air conditioning heat pumps without certifying they comply with the central air conditioning heat pump energy conservation standards.

63.    In response, Defendant timely elected the district court procedure under EPCA, 42 U.S.C. § 6303(d)(1) and (d)(3).

64.    Under these provisions, on or about February 28, 2024, the Department issued an order assessing a civil penalty against Defendant in accordance with 42 U.S.C. § 6303(d)(3)(A).

65.    Defendant failed to pay the assessed penalty within 60 days of the order as required by 42 U.S.C. § 6303(d)(3)(B).

66.    Thus, the Department is filing this complaint seeking enforcement of its penalty order. *Id.*

67.    Under 42 U.S.C. § 6303(d)(3)(B), this Court has "authority to review de novo the law and the facts involved" and "jurisdiction to enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part" the Department's penalty assessment.

## B.    FRIEDRICH AND ITS PRODUCTS

68.    At all times relevant hereto, Friedrich was both a manufacturer of consumer products as defined in 42 U.S.C. § 6291(1), (10) and (12); and a person as defined in 42 U.S.C. § 6202(2) and 10 C.F.R. § 430.2.

69.    Thus, Friedrich was and is subject to the requirements of 10 C.F.R. pts. 429 and 430 and the remedies of 10 C.F.R. pt. 429, subpt. C.

70.     Between January 2019 and December 2023, Friedrich manufactured and distributed in commerce products with the following model numbers: VHA09K****P, VHA09R****P, VHA12K****P, VHA12R****P, VHA18K****P-B, VHA18R****P-B, VHA24K****P, VHA24R****P, and VRP07K******A-* ("the Friedrich Products").  Below are examples of the products that Friedrich and a competitor distributed in commerce:



Friedrich VERT-I-Pak                 Allied Air Enterprises /Lennox International Inc.
                                     MagicPak

71.     Allied Air Enterprises/Lennox International Inc. submitted CAC/HP certification reports to the Department.

72.     Each of the Friedrich Products is powered by single phase electric current.

73.     Each of the Friedrich Products is air cooled.

74.    Each of the Friedrich Products is rated with a cooling capacity below 65,000 Btu per hour.

75.    None of the Friedrich Products is contained within the same cabinet as a furnace with a rated capacity above 225,000 Btu per hour.

76.    Each of the Friedrich Products is a heat pump or a cooling unit only.

77.    Each of the Friedrich Products meets the definition of central air conditioner or central air conditioning heat pump at 10 C.F.R. § 430.2.

78.    None of the following terms listed as exceptions to the definition of CAC/HP at 10 C.F.R. § 430.2 and as defined in 10 C.F.R. § 431.92 apply to any of the Friedrich Products:

    i.   A packaged terminal air conditioner;

    ii.   A packaged terminal heat pump;

    iii.   A single-phase single-package vertical air conditioner with cooling capacity less than 65,000 Btu/h;

    iv.   A single-phase single-package vertical heat pump with cooling capacity less than 65,000 Btu/h;

    v.   computer room air conditioner;

    vi.   A unitary dedicated outdoor air system.

79.    Central air conditioners and central air conditioning heat pumps are articles of a type which are distributed in commerce for personal use or consumption by individuals to a significant extent.

80.    According to the Air-Conditioning, Heating, and Refrigeration Institute ("AHRI"), an industry trade association that includes Friedrich as a full member, between 2019 and 2023, U.S. sales of central air conditioners and central air conditioning heat pumps (plus a small fraction of industrial equipment) ranged from 8,161,196 to 10,105,531 units per year.  https://www.ahrinet.org/analytics/statistics/monthly-shipments (last accessed Jan. 5, 2026).  The Department's most recent analysis shows U.S. sales of central air conditioners and central air conditioning heat pumps were approximately 4,672,000 in 2009.  *Technical Support Document: Energy Efficiency Program for Consumer Products: Residential Central Air Conditioners and Heat Pumps*, Table 3.2.11 (Dec. 2016). https://www.regulations.gov/document/EERE-2014-BT-STD-0048-0098.

81.    A substantial portion of those central air conditioners and central air conditioning heat pumps sales involved personal use or consumption by individuals in living spaces.

82.    Each of the Friedrich Products is an article of a type which is distributed in commerce to a significant extent for personal use or consumption by an individual.

83.    The Friedrich Products are not for commercial application.

84.    Individuals can use each of the Friedrich Products to provide comfort cooling air and/or comfort heating air in a personal living space.

85.    No feature or functionality of any Friedrich Product would preclude a consumer from using it in a personal living space.

86.    Each of the Friedrich Products is an article of a type which in operation consumes, or is designed to consume, energy.

87.    Each of the Friedrich Products is a consumer product within the meaning of 42 U.S.C. § 6291(1).

88.    Each of the Friedrich Products meets the definition of either "central air conditioner" at 42 U.S.C. § 6291(21), "heat pump" at 42 U.S.C. § 6291(24), or both.

89.    Each of the Friedrich Products is a single-package central air conditioner or central air conditioning heat pump subject to the energy conservation standards at 10 C.F.R. § 430.32(c).

## C.    TESTING AND CERTIFICATION

90.    Each of the nine Friedrich Product models represents at least one CAC/HP basic model.

91.    Friedrich did not provide to the Department a report certifying that any of the Friedrich Products comply with the applicable CAC/HP energy conservation standard set forth at 10 C.F.R. 430.32(c) before distributing in commerce the Friedrich Products.

92.    Friedrich did not test any of the Friedrich Products in conformance with the CAC/HP test procedure to determine whether each model complies with the applicable energy conservation standard at 10 C.F.R. § 430.32(c), before Friedrich began distributing in commerce those models.

93.    Friedrich did not provide to the Department any test data of any of the Friedrich Products demonstrating conformance with the CAC/HP test procedure

94.    Neither Friedrich nor any authorized third-party representative on Friedrich's behalf submitted to the Department any report representing that Friedrich had tested any of the Friedrich Products in conformance with the CAC/HP test procedure.

95.     Neither Friedrich nor any representative submitted to the Department a report certifying that any of the Friedrich Products meets the applicable energy conservation standard for CAC/HPs at 10 C.F.R. § 430.32(c) before distributing in commerce many thousands of units of the Friedrich Products, or by the annual certification deadline.

**D.     PROCEDURAL HISTORY**

96.     On or about December 15, 2023, the Department issued to Friedrich a Request for Information directing Friedrich to provide to the Department the number of units of each of the Friedrich Products that Friedrich had distributed in commerce during the years 2019 through 2023.

97.     On or about December 21, 2023, Friedrich submitted to the Department records demonstrating that it had distributed in commerce many thousands of units of the Friedrich Products between January 2019 and December 2023 (approximately 1,826 days).

98.     On or about January 24, 2024, the Department issued to Friedrich a Notice of Proposed Civil Penalty alleging that Friedrich had distributed in commerce many thousands of units of the Friedrich Products A) without testing them in conformance with the applicable test procedure and B) without submitting to the Department a certification report certifying that the basic models containing the Friedrich Products comply with the applicable energy conservation standards, and proposing a total civil penalty.

99.     Friedrich did not provide to the Department test data for the Friedrich Products.

100.     In accordance with 10 C.F.R. § 429.122(b)(3), the Department's Notice of Proposed Civil Penalty informed Friedrich of the opportunity to elect in writing, within

thirty (30) calendar days of receipt of the Notice of Proposed Civil Penalty, to have the procedures of 10 C.F.R. § 429.128, in lieu of the procedures of 10 C.F.R. § 429.126, apply.

101.    On or about February 22, 2024, Friedrich notified the Department that, pursuant to 42 U.S.C. § 6303(d)(1) and 10 C.F.R. § 429.124, Friedrich elected to require the Department to issue an Order assessing the penalty.

102.    On or about February 28, 2024, the Department issued an Order assessing Friedrich a civil penalty.

103.    Pursuant to 42 U.S.C. § 6303(d)(3)(b), Friedrich had at least sixty calendar days, until April 29, 2024, to pay the civil penalty assessed by the Department Energy.

104.    On June 4, 2024, the Department and Friedrich entered into a tolling agreement to allow the parties an opportunity to discuss the Department's Notice of Proposed Civil Penalty.  By mutual agreement, the parties extended that tolling agreement on multiple occasions to include the period April 29, 2024, through March 2, 2026, inclusive.

105.    As of the filing of this Complaint, Friedrich has failed to pay the civil penalty.

**E.    FRIEDRICH'S VIOLATIONS WERE KNOWING**

106.    The Department stated twice in 2014 that central air conditioners are subject to energy conservation requirements as consumer products.  *Notice of Data Availability and Notice of Proposed Rulemaking.  Energy Conservation Program for Certain Industrial Equipment: Energy Conservation Standards for Commercial Heating, Air-Conditioning, and Water-Heating Equipment*, 70 Fed. Reg. 20,114, 20,122–23 (Apr. 11, 2014); *Energy Conservation Program for Certain Industrial Equipment: Energy Conservation Standards for Single Package Vertical Air Conditioners and Single Package Vertical Heat Pumps*, 79 Fed. Reg. 78,614, 78,625–27 (Dec. 30, 2014).

107.    In those documents, the Department noted that certain manufacturers misclassified CACs as industrial models.  The Department explained the appropriate classification was typically as space-constrained CACs, meaning models with capacities up to 30,000 Btus per hour, "substantially smaller than" similar models such that increasing the size would cause significant cost or loss of consumer utility, and like models for sale as of December 2000.  *Id.*; 10 C.F.R. § 430.2 (defining "space-constrained product").

108.    In an ensuing final rule issued in September 2015, the Department did not adopt separate industrial energy conservation standards for CAC/HPs because CAC/HPs were already subject to consumer CAC/HPs energy conservation standards.  *Energy Conservation Program for Certain Industrial Equipment: Energy Conservation Standards for Single Package Vertical Air Conditioners and Single Package Vertical Heat Pumps*, 80 Fed. Reg. 57,438, 57,448, 57,500–01 (Sep. 23, 2015).

109.    Defendant knew or should have known that Defendant had not tested any of the Friedrich Products in accordance with the CAC/HP test procedure set forth in 10 C.F.R. § 430.23(m) when Defendant distributed in commerce many thousands of units of the Friedrich Products.

110.    Friedrich knew or should have known that the company had not submitted to the Department a report certifying that each of the Friedrich Products meets the applicable energy conservation standard for CAC/HPs at 10 C.F.R. § 430.32(c) before Friedrich distributed in commerce those units of the Friedrich Products or by the annual certification deadline.

111.    On or about June 8, 2023, the Department issued to Defendant a Warning Notice explaining the obligation to certify models as CAC/HPs, with a deadline of August 8, 2023.

112.    After receiving the Warning Notice, Defendant continued distributing the Friedrich Products.

113.    On or about August 3, 2023, the Department issued to Friedrich Test Notices stating that the Department had reason to believe that each of the Friedrich Products may not meet the applicable energy conservation standard for CAC/HPs at 10 C.F.R. § 430.32(c).

114.    After receiving the Test Notices, Friedrich continued distributing in commerce the Friedrich Products.

## HARM TO COMPETITORS

115.    Friedrich's unlawful sale of CAC/HPs violating EPCA's legal requirements gave Friederich an unfair cost advantage.  This allowed Friedrich to undercut its competitors, including competitors manufacturing CAC/HPs in the United States.

116.    Prior to this lawsuit, American manufacturers emphasized to the Department the critical importance of ensuring current products and new entries into the market for CAC/HPs are classified consistently across manufacturers.  Friedrich's competitors opposed Friedrich's application to the Department for relief from the EPCA regulations that various American manufacturers had already invested to comply with.  Those companies disputed Friedrich's argument that Friedrich did not receive sufficient notice of the applicable law, observing the Department's views had been docketed on the record for almost a decade.

117.    One United States manufacturer objected to Fredrich's request for relief that allowing different test procedures and rating standards for products that compete in the same market prevents customer comparison of energy efficiency.  American consumers would be harmed from excessive energy consumption if inferior products that do not meet proper efficiency standards for their product type continued to be offered for sale.

## COUNT I – FAILURE TO TEST AND PROVIDE INFORMATION

### (Violations of 42 U.S.C. §§ 6298, 6302(a)and 10 C.F.R. § 429.102(a))

118.    The United States incorporates Paragraphs 1 through 117 of this Complaint, as if fully set forth herein.

119.    Between approximately 2019 and 2023, Defendant Friedrich knowingly distributed in commerce many thousands of units of the Friedrich Products without testing any of them in accordance with the CAC/HP test procedure set forth in 10 C.F.R. § 430.23(m).

120.    Friedrich's failure to test the Friedrich products in accordance with the CAC/HP test procedure set forth in 10 C.F.R. §430.23(m) constitutes violations of 42 U.S.C. § 6302(a) and 10 C.F.R. § 429.102(a)(2).

121.    Friedrich did not maintain test data following the CAC/HP test procedure. 42 U.S.C. § 6296(b)(2); 10 C.F.R. § 429.71(c).

122.    Because Friedrich did not test any of the Friedrich Products, it could not and did not provide test information to the Department.

123.    The Department issued an Order assessing a civil penalty against Friedrich for its violation of 10 C.F.R. § 429.102, and Friedrich failed to pay the penalty within 60 calendar days of the Order.

124.    Friedrich is liable to the Department for the civil penalty assessed in February 2024.

## COUNT II – FAILURE TO MAKE A CERTIFICATION REPORT

## (Violations of 42 U.S.C. §§ 6302(a), 6298, and 10 C.F.R. § 429.102(a))

125.    The United States incorporates Paragraphs 1 through 117 of this Complaint, as if fully set forth herein.

126.    Between approximately 2019 and 2023, Defendant Friedrich knowingly failed to make reports required to be supplied under 10 C.F.R. part 429, by failing to certify properly covered products, in violation of 42 U.S.C. § 6302(a) and 10 C.F.R. § 429.102(a).

127.    Friedrich did not submit to the Department reports certifying that the Friedrich Products were tested in accordance with the test procedures applicable to CAC/HPs and that products complied with the applicable energy conservation standards for CAC/HPs.  42 U.S.C. § 6302(a) and 10 C.F.R. § 429.102(a).

128.    The Department issued an Order assessing a civil penalty against Friedrich for its violations of 42 U.S.C. § 6302(a) and 10 C.F.R. § 429.102(a), and Friedrich failed to pay the penalty within 60 calendar days of the Order.

129.    Friedrich is liable to the United States for the civil penalty assessed in February 2024.

## RELIEF REQUESTED

WHEREFORE, the Department of Energy respectfully requests that this Court:

A.  Enter an order and judgment enforcing the Department's February 2024 assessment of a civil penalty against Defendant Friedrich Air Conditioning, LLC, including pre- and post-judgment interest, as authorized by law.

B. Order such other and further relief as the Court deems just.

Respectfully submitted,

JONATHAN BRIGHTBILL
General Counsel

LUCY LEE
Acting Assistant General Counsel

DAVID CASE
Deputy Assistant General Counsel

/s/ Christina Studt
CHRISTINA STUDT
Trial Attorney
United States Department of Energy
1000 Independence Ave. SW (GC-32)
Washington, DC 20585
(240) 252-8535
Christina.studt@hq.doe.gov

BENJAMIN L. WALLACE
United States Attorney

/s/ Dylan J. Steinberg
DYLAN J. STEINBERG
Chief, Civil Division
Assistant United States Attorney
District of Delaware
1313 N. Market St.
Wilmington, DE 19081
(302) 225-9440
dylan.steinberg@usdoj.gov