## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES DEPARTMENT
OF ENERGY,

            Plaintiff,

    v.

FRIEDRICH AIR CONDITIONING, LLC,

            Defendant.

C.A. No. 26-220-JLH

## REPLY BRIEF IN SUPPORT OF
## FRIEDRICH AIR CONDITIONING, LLC'S
## MOTION TO DISMISS

OF COUNSEL:

Eugene Scalia (*pro hac vice*)
Jonathan C. Bond (*pro hac vice*)
Aaron Hauptman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER
LLP 1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
AHauptman@gibsondunn.com

Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Sara M. Metzler (#6509)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
metzler@rlf.com

*Attorneys for Defendant*

Dated:  May 8, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    The Penalty Rests On An Unlawful Retroactive Application Of DOE's
    2022 Rule ..................................................................................................... 2

        A.    DOE's Complaint Expressly And Unavoidably Relies On The
               2022 Final Rule .................................................................................... 2

        B.    DOE's Attempts To Minimize The 2022 Rule's Importance Lack
               Merit .................................................................................................... 4

        C.    DOE's New, Made-For-Litigation Statutory Interpretation Cannot
               Be Squared With The Agency's Own 2022 Rule ....................................... 6

    II.    DOE Lacks Statutory Authority To Impose Any Penalties For Failure To
    Test .............................................................................................................. 8

CONCLUSION ................................................................................................................... 10

## TABLE OF CITATIONS

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................8

*Chamber of Commerce v. OSHA*,
 636 F.2d 464 (D.C. Cir. 1980)............................................................................5

*Christopher v. SmithKline Beecham Corp.*,
 567 U.S. 142 (2012)............................................................................................3

*Groves v. Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. &
 Subsidiaries*,
 803 F.2d 109 (3d Cir. 1986)..........................................................................9, 10

*Kelly v. R.R. Ret. Bd.*,
 625 F.2d 486 (3d Cir. 1980)................................................................................7

*United States ex rel. Accardi v. Shaughnessy*,
 347 U.S. 260 (1954)............................................................................................7

**Statutes**

42 U.S.C. § 6291..................................................................................................7, 8

42 U.S.C. § 6293....................................................................................................10

42 U.S.C. § 6295....................................................................................................10

42 U.S.C. § 6296....................................................................................................10

42 U.S.C. § 6298....................................................................................................10

42 U.S.C. § 6302.................................................................................................9, 10

42 U.S.C. § 6303....................................................................................................10

42 U.S.C. § 6311..................................................................................................3, 8

42 U.S.C. § 6313......................................................................................................8

**Regulations**

10 C.F.R. § 430.2.................................................................................................4, 7

10 C.F.R. § 431.92 (2022) ..............................................................................3, 4, 5

76 Fed. Reg. 12,422 (Mar. 7, 2011)......................................................................9

79 Fed. Reg. 78,614 (Dec. 30, 2014).....................................................................2

**TABLE OF CITATIONS**
(*continued*)

**Regulations** *(continued)*                                                                    **Page(s)**

80 Fed. Reg. 57,438 (Sept. 23, 2015) ...............................................................................6

87 Fed. Reg. 2490 (Jan. 14, 2022) ............................................................................2, 3, 6

87 Fed. Reg. 64,550 (Oct. 25, 2022).................................................................................4

87 Fed. Reg. 75,144 (Dec. 7, 2022) ....................................................................2, 3, 5, 8

**INTRODUCTION**

The Department of Energy (DOE) does not dispute that Friedrich Air Conditioning fully complied with DOE's 2022 regulation requiring Friedrich's commercial single-package vertical units (SPVUs) to be tested as consumer products starting in December 2023.  Friedrich complied despite its objection that the 2022 rule exceeds DOE's statutory authority under the Environmental Policy & Conservation Act (EPCA), 42 U.S.C. § 6291 *et seq.*  Yet DOE refuses to let Friedrich's good-faith compliance go unpunished:  it assessed, and now seeks to enforce, a $57 million penalty for not following the 2022 rule in the five years *before* it took effect.  DOE's suit on its face seeks unlawful retroactive enforcement of the 2022 rule, on which its complaint relies.  Due process and administrative-law principles forbid that retroactive punishment.  DOE's suit also exposes its lack of authority to impose *any* civil penalties for failure to test.  And contrary to DOE's refrain, neither of those fatal defects depends at all on any factual questions.  This case really is that simple.

DOE now runs away from its own complaint and pretends that the 2022 rule—which DOE adopted specifically to address the status of SPVUs—has nothing to do with this dispute.  But its own allegations belie that illusion:  DOE's complaint explicitly relies on new regulatory provisions the 2022 rule created.  And DOE *had* to invoke that rule because, although DOE had long posited that some units EPCA defines as commercial SPVUs are nevertheless consumer products, it never said *which ones* until 2022.  DOE's effort to downplay the 2022 rule as a nonevent is implausible for the same reasons.  And DOE's attempt in its brief to backfill new statutory arguments that do not rest on the 2022 rule backfires:  Those arguments are foreclosed by its *current* regulations.

DOE's brief also confirms that it may seek civil penalties only for certain enumerated violations, and failure to test is not among them.  DOE nonetheless *infers* civil-penalty power, advancing the boundless claim that, for example, it can impose penalties for any transgression that could cause a company record to be inaccurate—in which event, DOE says, the company can be

1

penalized for "failure to permit access" to its records.  D.I. 12 (Opp.), at 17-18 (citation omitted).  That argument makes a mockery of the statutory language and constraints on DOE's authority.

DOE's complaint on its face seeks a massive civil penalty that the Constitution prohibits and that Congress did not authorize.  The Court should dismiss the suit with prejudice.

## ARGUMENT

### I.    The Penalty Rests On An Unlawful Retroactive Application Of DOE's 2022 Rule

DOE's civil-penalty suit must be dismissed because it is expressly and necessarily based on an impermissibly retroactive application of a position DOE first adopted in 2022.  DOE tries to duck that fatal retroactivity problem by running away from its 2022 rule, but it cannot escape its complaint's express reliance on the rule.  DOE also seeks to change the subject by floating still *more* new legal theories, but they contradict DOE's *current* regulations.  None of this turns on "disputed facts," (Opp. 2) but follows from DOE's Federal Register filings and its own complaint.

#### A.    DOE's Complaint Expressly And Unavoidably Relies On The 2022 Final Rule

As Friedrich showed, DOE's suit seeking backward-looking penalties depends on a rule it adopted in 2022 (applicable to testing as of December 2023).  D.I. 6 (Mot.), at 14-18.  DOE brushes off the 2022 rule as irrelevant (Opp. 13-16), but that regulation is essential to DOE's claim.

DOE's position since 2014 has been that it believes *some* units that meet the statutory definitions of SPVUs as commercial products should nevertheless be tested as consumer products.  That is because, in DOE's view, even if units "otherwise meet the definition of 'SPVU,' they may also meet the definition of an applicable consumer product, which" (DOE says) "takes precedence."  79 Fed. Reg. 78,614, 78,625, 78,627 (Dec. 30, 2014); *see, e.g.*, 87 Fed. Reg. 75,144, 75,150-75,151 (Dec. 7, 2022); 87 Fed. Reg. 2490, 2493-2495 (Jan. 14, 2022).  DOE's reading of EPCA is wrong:  It flouts the 2007 amendment that settled SPVUs' status by defining SPVUs as subtypes of "covered equipment" (*i.e.*, commercial products) that Congress deemed "industrial"

2

and setting commercial standards for them.  42 U.S.C. §§ 6311(1), (22)-(23), 6313(a)(10).  DOE's reading rests on a catchall definition of "industrial equipment" in § 6311(2)(A), *e.g.*, 87 Fed. Reg. at 75,150; *see* Opp. 14, but that general catchall never comes into play given the specific definitions of SPVUs as commercial products.  Friedrich will brief that issue, if necessary, in due course.

But the crucial point here is that, *even assuming* DOE's current view were correct that some units that meet the statutory definitions of SPVUs are implicitly excluded, the statute nowhere specifies *which ones*.  DOE's 2022 rule addressed that issue for the first time.  Indeed, the whole point of the 2022 rulemaking was to draw a never-before-specified line between units DOE accepts as commercial SPVUs and those it deems consumer SPVUs.  That was the "distinction" the 2022 rule sought "[t]o clarify" and the source of "confusion" it claimed to be addressing.  87 Fed. Reg. at 2494-2495; *see* 87 Fed. Reg. at 75,148.  And DOE admittedly did not derive that dividing line from anything in the statute; DOE relied on its own "review of the market."  87 Fed. Reg. at 2494.  From that new market review, DOE determined that SPVUs below 65,000 Btu/hour are implicitly excluded from commercial SPVUs *unless* they are "weatherized" or have "ventilation" above a specific threshold (400 cubic feet/minute).  *Id.* at 2495; *see* 87 Fed. Reg. at 75,148, 75,152.  But Friedrich and the industry had no way of "divin[ing]" those new supposed touchstones "in advance" of the 2022 rule.  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 159 (2012).

The 2022 rule codified those new, nonstatutory criteria in provisions that DOE's complaint invokes.  That rule added new regulatory definitions in 10 C.F.R. § 431.92 of "single-phase single-package vertical air conditioner" (and "heat pump") "with cooling capacity less than 65,000 Btu/h" that DOE accepts as commercial products.  *See* 87 Fed. Reg. at 75,167.  It also amended the existing regulatory definitions of SPVUs—which until then tracked the statutory definitions of SPVUs verbatim—to incorporate that new carveout.  *Id.*; *cf.* 10 C.F.R. § 431.92 (2022).  In a parallel rule-

3

making, DOE rewrote its regulatory definitions of the relevant type of consumer products (central air conditioners) in 10 C.F.R. § 430.2 to exclude SPVUs if, but *only* if, they meet the 2022 rule's criteria. 87 Fed. Reg. 64,550, 64,586 (Oct. 25, 2022). Like its proposed and final penalty, DOE's complaint expressly relies on these provisions. Compl. ¶ 78; Mot. Ex. A, at 1; *id.* Ex. B, at 1-2.

DOE denies relying on the 2022 rule (Opp. 15), but its allegations speak for themselves:

> 78.    None of the following *terms listed as exceptions* to the definition of CAC/HP at 10 C.F.R. § 430.2 and as defined in 10 C.F.R. § 431.92 apply to any of the Friedrich Products:
>
> * * *
>
> iii.    A single-phase single-package vertical air conditioner with cooling capacity less than 65,000 Btu/h;
> iv.    A single-phase single-package vertical heat pump with cooling capacity less than 65,000 Btu/h;
>
> * * *

Compl. ¶ 78 (emphasis added). That allegation necessarily rests on the 2022 rule because those "terms listed as exceptions" *did not exist* before the 2022 rule created them. And DOE had to rely on the 2022 rule because neither the statute nor DOE's pre-2022 rules articulate any dividing line between commercial and consumer SPVUs. DOE adopted the 2022 rule to draw that very line.

DOE's further, footnoted efforts to distance its suit from the 2022 rule (Opp. 14 n.22) are makeweights. It says (*id.*) its complaint does not "rel[y] on the *characteristics* added by the definitional changes in the 2022 rule." But by alleging that those newly defined "terms" do not "apply" to Friedrich's units, Compl. ¶ 78, DOE claimed the units *lack* those features. DOE also notes that its regulation defining central air conditioners "has been at the same provision of the Code of Federal Regulations" (10 C.F.R. § 430.2) since 2019. Opp. 14 n.22. But that is irrelevant—and misleading—because DOE *rewrote* that provision in 2022 and relies on the amended version here.

## B.    DOE's Attempts To Minimize The 2022 Rule's Importance Lack Merit

Unable to decouple its suit from the 2022 rule, DOE downplays it (Opp. 15) as an insignificant refinement of existing law. But DOE's description of the rule's changes as mere "modi-

4

fications of the industrial equipment definitions" (*id.*) profoundly undersells its effect.  As DOE admitted in adopting the 2022 rule, until that time its regulatory definitions "codified the statutory definitions," which treat *all* units that meet the statutory criteria as SPVUs.  87 Fed. Reg. at 75,147.  The 2022 rule departed from the statute by carving out a subset of SPVUs that meet the statutory SPVU definition but that DOE deems consumer products.  It did so by creating and defining wholly new regulatory categories of SPVUs that DOE accepts as commercial products and rewriting its existing regulations to treat *only* those new categories as commercial SPVUs.  *See* pp. 3-4, *supra*.

DOE repeatedly claims (Opp. 9, 16) this was a mere "modification" that "put a finer point on the existing requirements."  But the 2022 rule did not retouch or clarify some preexisting line with a sharper pencil; it drew an entirely new line on a blank page.  Before the 2022 rule, DOE had expressed its opinion that some dividing line between commercial and consumer SPVUs *exists*, but it had never said *where* that line lies.  Thus, until 2022, a company had no way of knowing whether *its* units were among those DOE considered consumer rather than commercial products.

DOE seizes on its boilerplate statement in the 2022 rule's preamble that its "new definitions do not reclassify any products."  Opp. 16 (quoting 87 Fed. Reg. at 75,151-75,152).  But an agency's self-serving description cannot change what a regulation's operative text actually does.  "It is the substance of" an agency action that "is decisive," not the agency's chosen "label."  *Chamber of Commerce v. OSHA*, 636 F.2d 464, 468 (D.C. Cir. 1980).  That the 2022 rule changed the regulatory status of SPVUs is clear on its face.  Again, DOE admitted in adopting the 2022 rule that its then-existing regulations "codified" the statute's SPVU definitions.  87 Fed. Reg. at 75,147; *see* 10 C.F.R. § 431.92.  But the 2022 rule rewrote those existing regulatory definitions to incorporate the new carveout the 2022 rule created, which excludes SPVUs that meet the *statute's* criteria but lack the additional features the *agency* declared essential (based on its market review).  The rule's

5

reclassification of the SPVUs it carved out is undeniable—as is the reality that, before then, industry could not know *which* products DOE believed should be carved out.  And what DOE said publicly in the Federal Register raises no "factual question[s]" (Opp. 16) that bar dismissal.

Finally, DOE says the 2022 rule's changes do not matter because DOE had "repeatedly warned" in prior regulatory preambles that (in its view) "certain manufacturers" were misclassifying their units as SPVUs.  Opp. 15 (emphasis omitted).  That fails for the same basic reason:  Even if such preambles could provide the fair notice that due process demands, none apprised Friedrich (or anyone) *which* units DOE thought were being misclassified.

Moreover, like its complaint, DOE's brief tells only half the story.  It cites "warnings" (Opp. 15) in the 2014 proposed rule (and an earlier 2014 notice of data availability).  But DOE leaves out that, in the 2015 *final* rule, the agency relented:  DOE acknowledged pushback from the industry and said it was reserving the issue for a future, "separate rulemaking," 80 Fed. Reg. 57,438, 57,448 (Sept. 23, 2015).  On any understanding of fair notice, this meant that obligations would be resolved later and applied prospectively—not that for the foreseeable future "certain" products were already in violation of standards not announced until 2022, when DOE addressed the "confusion" it admittedly "may have  * * *  compounded."  87 Fed. Reg. at 2495.

### C.   DOE's New, Made-For-Litigation Statutory Interpretation Cannot Be Squared With The Agency's Own 2022 Rule

DOE tries to sidestep the fundamental problems of applying the 2022 rule retroactively to Friedrich by arguing (Opp. 12-15) that it could seek civil penalties based on the statute without relying on the regulation.  But DOE's new statutory arguments only compound its problems, because DOE cannot seek penalties based on theories of EPCA that contradict its *current* rules.

DOE argues that Friedrich's Vert-I-Pak units are consumer products because they meet the statutory "definition of [central air conditioners]," Opp. 13, and therefore cannot be commercial

products because the commercial and consumer frameworks are "mutually exclusive," Opp. 14 (citation omitted).  As Friedrich will show if the case proceeds, DOE's position distorts the statute. More immediately for present purposes, that position is irreconcilable with its *existing* regulations.

As amended in 2022, DOE's regulations do *not* treat every unit that meets the statutory definition of central air conditioners as consumer products.  10 C.F.R. § 430.2.  As just discussed, the post-2022 regulatory definition of "central air conditioner" expressly excludes the categories of SPVUs that possess what DOE deems commercial features.  *Id.*  DOE's regulation today states that "Central air conditioner or central air conditioning heat pump means a product" that has the attributes set forth in the statutory definition of "central air conditioner" in 42 U.S.C. § 6291(21) "*other than* a  * * *  single-phase single-package vertical air conditioner with cooling capacity less than 65,000 Btu/h, [or] single-phase single-package vertical heat pump with cooling capacity less than 65,000 Btu/h."  10 C.F.R. § 430.2 (emphasis added); *accord* Compl. ¶ 37; Mot. Ex. A, at 1.

That exclusion is precisely why DOE's complaint expressly alleges that Friedrich's units do *not* fit within those "exceptions" (Compl. ¶ 78) created by regulation in 2022.  DOE could not impose a penalty based on a position contrary to its own rules.  "An action undertaken by an agency contrary to its regulations is illegal and of no effect."  *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 492 (3d Cir. 1980) (citing, *inter alia*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).  And imposing penalties based on a position even more aggressive than DOE's current regulations would make its already-fatal fair-notice problem even worse.  DOE's argument that the statutory definition of central air conditioner by itself supports the penalty is a nonstarter.

DOE also argues for the first time that Friedrich's units fail the statutory definition of SPVUs because SPVUs are "'commercial package air conditioning and heating equipment,'" which "must be 'for commercial application,'" and whether Friedrich's units qualify depends on

"disput[ed] facts pled in the Complaint." Opp. 13 (quoting 42 U.S.C. § 6311(8)(A)). But DOE's novel theory that Friedrich's units fail § 6311(8)(A) itself appears nowhere in the complaint. DOE's brief quotes a single sentence stating that "[t]he Friedrich Products are not for commercial application." *Id.* (quoting Compl. ¶ 83) (emphasis omitted). But that is a textbook "[t]hreadbare," "conclusory statemen[t]" that is "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). And the complaint never hints that Friedrich units are not SPVUs on that basis. Indeed, it never discusses or even mentions § 6311(8)(A) (or any other portion of § 6311) at all.

More fundamentally, this new argument cannot be reconciled with the 2022 rulemaking. The central premise of the 2022 rule is that some units that fit the statutory "definitio[n] of SPVUs" "in isolation" are nevertheless consumer products because "EPCA defines 'consumer product,' in part, as an article which, to any significant extent, is distributed in commerce for personal use or consumption by individuals," and some SPVUs (DOE said) are marketed for personal use. 87 Fed. Reg. at 75,147-75,148 (quoting 42 U.S.C. § 6291(1)(B)). *That* is what the 2022 rule declared the touchstone for classifying SPVUs—and why DOE purported to define commercial SPVUs based on a market review. But DOE's brief throws all that overboard and argues the 2022 rule's dividing line is irrelevant—making it a mystery why DOE undertook that (contentious) rulemaking at all.

*****

DOE cannot escape its complaint's express attempt to enforce the 2022 rule retroactively. That defect is fatal—and it has nothing to do with disputing the complaint's version of the facts. DOE's own rulemaking documents in the Federal Register, coupled with its complaint, show that it unlawfully seeks to penalize noncompliance with the 2022 rule *before* that rule took effect.

## II.     DOE Lacks Statutory Authority To Impose Any Penalties For Failure To Test

DOE's civil-penalty suit—and at a minimum Count I—must be dismissed in any event because DOE has no statutory authority to impose *any* penalty for failures to test. Mot. 18-20.

8

EPCA's text makes clear that Congress has not granted DOE that power. The agency's request to infer that authority anyway from provisions authorizing penalties for *other* violations would invite circumvention of statutory limits on civil penalties and lacks any limiting principle.

DOE does not dispute that it needs statutory authorization to impose penalties. DOE conceded years ago, and does not now deny, that it "may only assess penalties for *specified prohibited acts*" enumerated in EPCA. 76 Fed. Reg. 12,422, 12,441 (Mar. 7, 2011) (emphasis added). And DOE never contests that, under binding precedent, DOE cannot claim for itself authority to penalize conduct *Congress* did not subject to penalties, because nothing in EPCA "expressly grant[s]" DOE the "power" to "decide what conduct should be penalized." *Groves v. Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 117 (3d Cir. 1986). That should be the ballgame because DOE does not and cannot identify any statutory provision authorizing penalties for failures to test.

Instead, DOE doubles down on the complaint's theory that the agency can penalize failures to test because they can lead to *other* violations that are subject to civil penalties. Opp. 17-19 (citing 42 U.S.C. § 6302(a)(3), (5)). But that bootstrapping fails for reasons Friedrich already explained (Mot. 19-20) and DOE never addresses. Even if not performing particular tests could *give rise to* violations that are subject to penalties, it is those resultant violations which must be identified and penalized; not performing a particular test itself is not independently sanctionable. DOE's theory cannot support a civil penalty, like this one, based on failures to test.

Worse, DOE's indirect-violation theory of penalties would enable the agency to end-run statutory limits on civil penalties. For example, DOE posits that failure to test units properly also means that a manufacturer also failed "to accurately 'make reports'" under 42 U.S.C. § 6302(a)(3). Opp. 18 (citation omitted). But failure-to-report violations under § 6302(a)(3) accrue for "each

9

*day* of violation," 42 U.S.C. § 6303(a) (emphasis added), yet DOE imposed penalties for "[e]ach *unit*," Mot. Ex. A, at 2 (emphasis added).  That flouts EPCA's penalty limits:  DOE's per-unit failure-to-test penalty is more than *six times* the per-day failure-to-report maximum.  Mot. 20.

DOE also asserts that failure to properly test automatically means a manufacturer has "distributed" products "not in conformity with" the relevant "energy conservation standards."  Opp. 17 (citing 42 U.S.C. § 6302(a)(5)).  But that does not follow; a product can meet energy-efficiency standards whether or not it is tested.  DOE's contrary view sidesteps EPCA's process (enforced by per-day penalties) for the Secretary to ensure products are substantively compliant.  *See* Mot. 19 (discussing 42 U.S.C. § 6296(b)(3)).  And DOE's theory that an upstream procedural error automatically results in a downstream distribution violation is limitless.  That facile theory would enable DOE to recast any earlier defect as incurably tainting the products.

Finally, DOE briefly suggests (Opp. 19-20) that Congress *has* given the agency discretion to define which violations trigger penalties, but what it cites comes nowhere close to the "expres[s] gran[t]" of authority the Third Circuit in *Groves* held is necessary, 803 F.2d at 117.  The provisions it collects address DOE's authority to adopt additional requirements and procedures—not to specify which violations result in penalties.  *See* 42 U.S.C. §§ 6293(a), 6295(*o*)(2), 6298, 6295(r).  DOE points to § 6303(a), which it says authorizes penalties for violations of "requirements prescribed by the Secretary."  Opp. 19 (quoting 42 U.S.C. § 6303(a)).  But that provision concerns the division of labor between DOE and the FTC in enforcing certain statutory violations:  It says that "penalties for *violations of section 6302(a)(3)* of this title which *relate to requirements prescribed by* the Secretary * * * shall be assessed by the Secretary," not by the FTC.  42 U.S.C. § 6303(a) (emphases added).  That looks nothing like express authority to determine which violations trigger penalties.

## CONCLUSION

The Court should dismiss the complaint—or at minimum Count I—with prejudice.

*Of Counsel*:

Eugene Scalia (*pro hac vice*)
Jonathan C. Bond (*pro hac vice*)
Aaron Hauptman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
EScalia@gibsondunn.com
JBond@gibsondunn.com
AHauptman@gibsondunn.com

/s/ Jeffrey L. Moyer
Raymond J. DiCamillo (#3188)
Jeffrey L. Moyer (#3309)
Sara M. Metzler (#6509)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
moyer@rlf.com
metzler@rlf.com

Dated:  May 8, 2026

*Attorneys for Defendant*

11